IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:11-cv-03868-LS |
| | ) | |
| AMANJEET KAUR, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Amanjeet Kaur ("Kaur") is subject to denaturalization for one simple reason – she failed to establish her admissibility to the United States as a lawful permanent resident ("LPR"), for which there is no exception or waiver, before she naturalized. Every argument that Kaur raises in her Motion for Judgment on the Pleadings ("Motion") – that her inadmissibility is excused because the Government never rescinded her LPR status; that this Court should somehow waive her noncompliance with the naturalization requirements; and that her son's naturalization challenge should pave the way for her own – is wholly unavailing. Because Kaur cannot establish that she is entitled to judgment as a matter of law based on the facts contained in the Government's complaint, her Motion must fail, and this case should proceed to discovery.

**I.      FACTUAL BACKGROUND**

Kaur, a native of India, married Surjit Singh ("Singh"), also a native of India, on December 14, 1978. Complaint at ¶ 7. On May 1, 1993, Singh entered the United States without inspection, and was immediately placed in deportation proceedings. *Id.* at ¶ 8.

Singh filed an asylum application in New York, which an immigration judge denied on May 9, 1996. Complaint at ¶ 9. While Singh's appeal of that denial was pending, he filed a

second asylum application on October 7, 1996. *Id.* at ¶ 10. *Id.* Singh filed the second application in San Francisco under the name "Sukhjit" Singh – a different spelling of his own name – along with a different date of birth. *Id.* In his second asylum application, Singh alleged to have persecuted in India, even though he was living in the United States during the alleged persecution. *Id.* at ¶ 11.

The former Immigration and Naturalization Service ("INS")[1] granted Singh's second asylum application on December 3, 1996. Complaint at ¶ 12. The Government officer who approved the application was not aware that Singh had already sought asylum unsuccessfully in another jurisdiction, or that he had been placed in deportation proceedings in 1993. *Id.* Singh failed to provide this information on his second asylum application, as he was required to do. *Id.*

On January 28, 1997, Singh (using the name "Sukhjit Singh") petitioned for Kaur to obtain derivative asylee status by filing a Refugee/Asylee Relative Petition, Form I-730. Complaint at ¶ 13. The former INS approved Singh's Form I-730 on February 25, 1997, and Kaur was admitted to the United States on July 24, 1997, as a derivative asylee. *Id.* at ¶ 14. It was only from Singh's fraudulently-obtained asylum status that Kaur, as his spouse, was able to obtain her derivative status. *Id.* at ¶ 15. After filing a Form I-485, Application for Adjustment of Status, Kaur was granted LPR status on May 27, 2003, as an AS-7 (spouse of an asylee).[2] *Id.*

---

[1] On March 1, 2003, the INS was abolished and its functions were transferred to various agencies within the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.

[2] The regulation at 8 C.F.R. § 209.2 permits an asylee to adjust her status to that of lawful permanent resident, provided that she (1) has been physically present in the United States for at least one year after having been granted asylum; (2) continues to be a refugee, as that term is defined under 8 U.S.C. § 1101(a)(42), or – like Kaur – is the spouse or child of a refugee; and, (3) is admissible to the United States.

at ¶ 17.

On April 26, 2007, Kaur filed an Application for Naturalization (N-400), which the United States Citizenship and Immigration Services ("USCIS") approved on March 7, 2008. Complaint at ¶ 18.  On March 20, 2008, Kaur was sworn in as a naturalized citizen of the United States.[3]  *Id*. at ¶ 19.

When Singh applied for lawful permanent resident status after Kaur naturalized, USCIS discovered that he had previously been placed in removal proceedings under another name and alien number, and had an outstanding order of deportation.  Complaint at ¶ 20.  USCIS denied Sing's application for adjustment of status on July 3, 2008.  *Id*.  On July 2, 2008, the USCIS office in San Francisco issued a notice to Singh, Kaur, and their four children rescinding its grant of asylum as of July 2, 2008.  *Id*. at ¶ 22.

The Government filed its complaint seeking Kaur's denaturalization on June 13, 2011. Complaint at p. 6.  The Government alleges only that Kaur illegally procured her natuarlization because she was never lawfully admitted as a permanent resident of the United States. Complaint at ¶¶ 27-30.

---

[3] Because Kaur is currently a United States citizen, her argument that she qualifies for a waiver to denaturalization under 8 U.S.C. § 1227(a)(1)(H) – which applies only to the removability of aliens based on inadmissibility – is inapplicable.  Kaur's Motion at 16-19.  Even if it were applicable, only the Attorney General – not this Court – has the discretion under the statute to grant a waiver.  8 U.S.C. § 1227(a)(1)(H).  Moreover, this Court should deny Kaur's request that – because Singh has allegedly applied for a fraud waiver under § 1227(a)(1)(H) – it should decline to order Kaur's denaturalization.  Kaur Motion at 22, 23.  Even if Singh were to obtain an inadmissibility waiver, it would not apply retroactively with respect to Kaur's LPR application.  Thus, § 1227(a)(1)(H) offers no reason why this Court should not order Kaur's denaturalization.

## II.    STATUTORY BACKGROUND

Under Federal Rule of Civil Procedure 12(c), a court may not grant judgment on the pleadings unless "the movant clearly establishes that no material issue of fact remains to be resolved and that [s]he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).  In reviewing a Rule 12(c) motion, a court must accept "as true all of the allegations in the complaint and draw[] all reasonable inferences in favor" of the nonmoving party. *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)

The denaturalization statute, 8 U.S.C. § 1451(a), holds that this Court must revoke an individual's naturalization and cancel her Certificate of Naturalization if her naturalization was either (a) illegally procured, or (b) procured by concealment of a material fact or by willful misrepresentation.  "Failure to comply with any of these conditions renders the citizenship 'illegally procured,' and naturalization that is unlawfully procured can be set aside."[4] *Federenko v. United States*, 449 U.S. 490, 506 (1981); *see also United States v. Marilyn Thi Dang*, 488 F.3d 1135, 1139 (9th Cir. 2007) (holding that courts have no discretion in excusing conduct and must enter a judgment of denaturalization if the Government sustains its burden).  To qualify for naturalization, an applicant must establish that she was lawfully admitted to the United States as

---

[4] Indeed, once a court has determined that the Government has met its burden of proving that a naturalized citizen obtained his citizenship illegally, or by concealing a material fact or willfully misrepresenting facts, that court has no discretion to excuse the conduct and must enter a judgment of denaturalization.  *See U.S. v. Norris*, 749 F.2d 1116, 1122 (4th Cir. 1984) (citations omitted).

an LPR in accordance with all applicable provisions of the Immigration and Nationality Act.  8

U.S.C. § 1429; *see also* 8 U.S.C. § 1427(a)(1).

## III.   DISCUSSION

As the Government explains in its complaint, Kaur obtained her naturalization as a direct

result of her husband's asylum fraud, which renders her inadmissible to the United States and

therefor subject to denaturalization.  Despite her argument to the contrary, the fact that the

Government has not formally rescinded Kaur's LPR status does not affect her lack of

admissibility.  Furthermore, Kaur wrongly asserts that her son's earlier naturalization case –

which appears to have been dismissed before it was substantively litigated – collaterally estops

the Government from pursuing any claim against Kaur.

### 1.     Kaur illegally procured her naturalization because she was not lawfully admitted for permanent residence to the United States when she applied.

Under 8 U.S.C. § 1159, the spouse of an asylee may adjust her status to that of lawful

permanent residence if she derived her spouse's lawfully-obtained asylum status.  Kaur was

ineligible for her asylum status because, as she admits, she obtained it as a result of Singh's

fraudulent asylum application.  *See* Kaur's Motion at 5.  Because Kaur's LPR status was

predicated upon the same fraud, she was never lawfully admitted as a permanent resident of the

United States, which rendered her ineligible to naturalization.  As a person not eligible for

naturalization, Kaur illegally procured her naturalization, and it must be revoked under 8 U.S.C.

§ 1451(a).[5]  Thus, Kaur is not entitled to judgment on the pleadings, and allow the parties should

_____

[5] As noted, above, under 8 U.S.C. § 1451(a), an individual's naturalization can be
revoked *either* because (1) she illegally procured it, *or* (2) she procured it by concealment of a
material fact or by willful misrepresentation.  The Government alleges only that Kaur illegally
procured her naturalization; it does not make any assertion that she procured it by concealment

be allowed to engage in discovery.

> **2.**   **The fact that the Government has not rescinded Kaur's LPR status does not affect her lack of lawful admission to the United States.**

Kaur erroneously claims that because the Government did not rescind her LPR status under 8 U.S.C. § 1256 within five years after she obtained it, her naturalization is not revocable. Kaur's Motion at 10-12.  This argument ignores the fact if an individual was not *lawfully admitted* to the United States at the time she became an LPR, she is ineligible to naturalize, regardless of whether her LPR status is ever rescinded.  8 U.S.C. § 1429 ("no person shall be naturalized unless he has been *lawfully admitted* to the United States for permanent residence . . . .") (emphasis added); *see also* 8 U.S.C. § 1427(a)(1).

Here, when Kaur was granted LPR status on May 27, 2003, she did so based solely on her husband's fraudulent grant of asylum status.  Thus, regardless of whether her LPR status was rescinded or whether the Government's deadline for doing so has passed, Kaur naturalized without having been lawfully admitted to the United States for permanent residence. Accordingly, she procured her naturalization unlawfully, her naturalization is revocable under 8 U.S.C. § 1451(a), and her Motion must fail.[6]

---

of a material fact or by willful misrepresentation.  *See* Complaint at ¶¶ 27-30.  Thus, Kaur's contention that she "engaged in no unlawful conduct, concealed no material fact and made no willful misrepresentation to obtain her citizenship or any other immigration benefit" is inapposite.  Kaur's Motion at 20-21.

[6]  Incidentally, unlike 8 U.S.C. § 1256, 8 U.S.C. § 1451 contains no statute of limitations. *See Schneiderman v. United States*, 320 U.S. 118, 174 (1943) (Stone, C.J., dissenting).

3.    **Kaur's son's naturalization case does not collaterally estop the Government from seeking Kaur's denaturalization because the earlier case did not yield a final judgment on the merits.**

Kaur claims that her son's naturalization challenge in federal court, which also concerned Singh's original asylum fraud, collaterally estops the Government from seeking her denaturalization. Kaur's Motion at 13-16. Because the question of whether Singh's asylum fraud affected his family members' admissibility for naturalization purposes was never litigated in the son's case (in fact, the case appears to have been voluntarily dismissed before any issue was litigated), collateral estoppel in no way precludes the Government from pursuing its case against Kaur.

The prerequisites for the application of collateral estoppel are satisfied only when: "1) the issue sought to be precluded [is] the same as that involved in the prior action; 2) that issue [was] actually litigated; 3) it [was] determined by a final and valid judgment; and 4) the determination [was] essential to the prior judgment." *Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007). In other words, collateral estoppel "precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted." *Melikian v. Corradetti*, 791 F.2d 274, 277 (3d Cir.1986). A voluntary dismissal ordered before an issue is actually litigated normally does not invoke the doctrine. *See*, *e.g.*, *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002) (stating that for the purpose of collateral estoppel, a "voluntary dismissal of a claim prior to any adjudication and without any stipulated findings of fact does not actually litigate any issue."); *Best v. City of Portland*, 554 F.3d 698, 701 (7th Cir. 2009) (because the case was voluntarily dismissed, there was no "final judgment on the merits," as collateral estoppel requires).

The parties in Kaur's son's naturalization case stipulated to a voluntary dismissal, which the court presumably approved.  *See* Kaur's Motion at Ex. 2.  However, it does not appear (and Kaur does not argue) that before dismissing the case, the court "determined by a valid and final judgment" the issue of whether Singh's asylum fraud affected any of his family members' admissibility, or that any determination was essential to the final judgment.  *Electro-Miniatures Corp.*, 889 F.2d at 44.  In fact, based on the Kaur's Motion and its exhibits, it does not appear that any issue was substantively litigated before the Court dismissed the case.  Accordingly, the doctrine of collateral estoppel does not apply.

## IV.    CONCLUSION

As the Government's complaint explains and as the evidence will demonstrate, Kaur illegally obtained her citizenship because she was not a legal permanent resident at the time she applied, which qualifies for her denaturalization.  Thus, Kaur is entitled to judgment on the pleadings, and the Court should permit the parties to proceed to discovery.

//

//

//

//

//

//

//

//

//

Dated: January 24, 2011                           Respectfully Submitted,

                                                    TONY WEST
Assistant Attorney General
Civil Division

DAVID J. KLINE
Director
Office of Immigration Litigation
District Court Section

THEODORE W. ATKINSON
Senior Litigation Counsel

 _/s/_ Stacey I. Young
STACEY I. YOUNG
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-7171
Facsimile: (202) 305-7000
Email: stacey.young@usdoj.gov

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of January, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, to which distinguished opposing counsel is a member:

John Hykel
Two Penn Center
1500 JFK Boulevard, Suite 1300
Philadelphia, PA 19102

/s/ Stacey I. Young
STACEY I. YOUNG
U.S. Department of Justice
District Court Section
Office of Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-8014