IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CIVIL ACTION |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | 2-11-cv-03868-LS |
| | ) | |
| **AMANJEET KAUR,** | ) | |
| | ) | |
| **Defendant,** | ) | |

**MEMORANDUM IN LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

Defendant, Amanjeet Kaur, by and through her undersigned counsel, John Hykel, Esq., hereby submits a Memorandum of Law in Support of her Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

This is an unprecedented case of the United States Government moving to strip a 59-year-old, law-abiding mother of two (2) U.S. citizen children and grandmother of one (1) U.S. citizen child of her U.S. Citizenship. It is undisputed that Ms. Amanjeet Kaur has not committed one single illegal act in the United States or anywhere in the world. The government does not move to denaturalize Ms. Kaur by allegations of any wrongful conduct she committed, rather, it references an alleged fraud committed 15 years ago by her husband, Sukjhit Singh.

Ms. Kaur and Mr. Singh married in 1978 in India. *See Exhibit 1, Kaur Deposition, p. 8, l. 25, p. 9, l. 1.* Ms. Kaur and her husband are members of the Sikh religion, a group which during the 1990's when the family was granted asylum in the United States, were kidnapped, tortured and killed in their home country of India. *See Exhibit 2, Country Condition Reports.* Mr. Singh fled India in

1

1993 for fear of being persecuted for his religion and sought asylum in the United States. *See Exhibit 1, Kaur Deposition, p. 9, l. 20-25, p. 10, l. 1-15; See also Exhibit 3, Singh I-485 Application, p. 3, item C, re: Sikh faith of Mr. Singh.*

Mr. Singh's first asylum application was denied. Out of fear for his life, Mr. Singh applied a second time for asylum using a different name and was granted asylee status. It is well documented that during this time period, among other persecution, Sikhs who were denied asylum in foreign countries and deported back to India were targeted at the airport upon arrival; the lucky Sikhs could succumb to extortion at the airport and tender a hefty sum, but the unlucky Sikhs immediately suffered kidnapping, torture and often death. *See Exhibit 2, Country Condition Reports.* It is also well documented that police authorities persecuted members of the Sikh religion. In her deposition, Ms. Kaur testified that while in India on two separate occasions police officers came to their home in search of Mr. Singh. *See Exhibit 1, Deposition Transcript, p. 10, l. 1 -21.* Though alleged to be a fraud, Mr. Singh is a bone fide asylee within the meaning of INA 101(a)(42)(A).[1]

On July 24, 1997, Amanjeet Kaur was lawfully admitted to the United States as a derivative asylee of her husband, and has resided here continuously since that time. She applied for permanent residence one year after being granted asylum status, and on May 27, 2003 her status as a permanent resident was granted by U.S. CIS.

The government stated that it learned of Mr. Singh's use of two identities in April of 2008, however, an FBI biometric "rap sheet" report generated by the Department of Justice on or about

---

[1] "The term 'refugee' means (A) any person who is outside any country of such person's nationality, or in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion;" INA Section 101(a)(42)(A).

September 28, 2005 reveals that the Government knew of it at least by that date, though some reports appear to be generated much earlier. *See Exhibit 4, Singh Rap Sheet.*

Approximately three (3) years later, Ms. Kaur applied for United States citizenship. At the time that Ms. Kaur applied for citizenship, the U.S. Government knew of her husband's use of two identities. On March 20, 2008, Ms. Kaur was admitted to citizenship by U.S. CIS.

On July 2, 2008, the U.S. CIS office in San Francisco issued a Rescission Notice to Singh, Kaur, and their four (4) children rescinding their granted asylum as of July 2, 2008. For reasons discussed in the Argument Section of this brief, the Rescission was unlawful.

The son of Kaur and Singh, Ranjodh Singh, obtained his legal permanent resident status exactly the same way his as his mother; he was a derivate beneficiary of his father's asylum application. Subsequent to the alleged Rescission of the family's asylum status and with full knowledge of the alleged "illegal procurement" of Ms. Kaur's citizenship, USCIS granted the naturalization of Ranjodh Singh on September 25, 2009.

Subsequently, Ms. Kaur filed an I-130 Petition for her husband, Mr. Singh, currently in removal proceedings to serve as the basis for his permanent residence in the United States. In retaliation for her act to help her husband, the Government, filed this action on June 14, 2011, to have the naturalization of Ms. Kaur revoked under Section 340(a), 8 U.S.C. 1451(a) of the Immigration & Nationality Act. The Government alleges the Ms. Kaur's naturalization was "illegally procured" because she was not lawfully admitted for permanent residence.  The Government's argument fails as a matter of law. Ms. Kaur's lawful permanent resident status has never been set aside in removal proceedings (INA §237), rescission proceedings (INA §246), or any other administrative action. It is undisputed that if denaturalized, Ms. Kaur will be a lawful permanent

resident ("LPR") of the United States and her LPR status cannot be revoked.

The Government's explanation as to the legality of Ranjodh's naturalization amounts to a violation of its own Regulations and a misapplication of the law. If Ranjodh's naturalization is legal, then his mother's naturalization is also legal and cannot be said to have been "illegally procured." As a matter of law this Court should find that the Defendant was lawfully admitted to the United States for permanent residence and, further, that her naturalization was lawfully obtained. Therefore, it is requested that the Motion for Summary Judgment be granted and that the Complaint of the Plaintiff be dismissed.

## II. LEGAL ARGUMENT

### A. STANDARD OF REVIEW

Pursuant to Federal Rules of Civil Procedure 56(c), a Court must grant Summary Judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. A Court should grant Summary Judgment against the party who fails to demonstrate facts to establish an element essential to his case where the party will bear the burden of proof of that essential element at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986); Conoshenti v. Pub. Serv. Elec. and Gas Co., 364 F.3d 135-140 (3rd Cir. 2004). Even if all of the facts asserted by the Government are taken as true, the Government's cause of action fails as a matter of law. The Government argues that Ms. Kaur's naturalization was illegally procured, and it seeks to revoke her U.S. citizenship under INA Section 340(a). The government carries "a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship." Fedorenko v. U.S., 449 U.S. 490, 505 (1981), *quoting*: Costello v. U.S., 395 U.S. 265, 269 (1961). Denaturalization should not be presumed and citizenship should only be taken

away where there is **<u>clear, unequivocal and convincing evidence</u>** that leaves the issue of illegality free of doubt. *Id.*, at 506. (emphasis added). The government has failed to meet its burden of proof.

There is absolutely no precedent in this jurisdiction or elsewhere where a court of law has found that a person "illegally procured" her citizenship by virtue of an alleged fraud committed by the primary beneficiary of an asylee, when she was a derivative beneficiary. Likewise, there is absolutely no precedent for denaturalization where facts known to the Government at the time of approval of an application for naturalization were later relied upon to claim that the applicant "illegally procured" her citizenship. Finally, there is no precedent which allows the Government to hold that one derivative beneficiary family member's naturalization is legal, yet another's is "illegal." Indeed, as discussed below, the Government's own regulations required that if an illegality existed, it should have revoked citizenship. Even if the facts asserted by the Government are true, its claim fails as a matter of law.

### B. <u>MS. KAUR'S CITIZENSHIP WAS NOT ILLEGALLY PROCURED</u>

Even if all the facts of record are taken as true, Ms. Kaur did not "illegally procure" her citizenship within the meaning of INA Section 340, which in relevant part states:

"It shall be the duty of the United States attorneys…to institute proceedings…for the purpose of revoking or setting aside the order admitting such person to citizenship and cancelling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation…." INA §340. It is undisputed that Ms. Kaur engaged in no unlawful act and committed no misrepresentation.

Only in cases where the *conduct of the person* was contrary to the statutorily proscribed behavioral requirements for citizenship and such behavior was intentionally concealed by the applicant at the time of naturalization has it been held that citizenship was "illegally procured" under INA §340. These cases include Nazi war criminals, communist party members, felony offenders, commission of crimes of moral turpitude[2], and failure to reside in the United States for the statutorily proscribed period of 5 years prior to citizenship.[3] Ms. Kaur has engaged in no conduct which is offensive to the statutory requirements for citizenship.

Also crucial, the Government knew about the alleged illegality prior to her naturalization and the naturalization of her son, Ranjodh. If the Government knew about Mr. Singh's use of two identities in seeking asylum and issued Revocation Notices prior to Ranjodh's naturalization, it cannot now argue that Ms. Kaur's naturalization was illegally procured.

Through discovery, the government provided a statement regarding the legal basis for Ranjodh's naturalization; it stated:

> "The decision to allow the naturalization of Ranjodh Singh was based on the Agency's close adherence to its own regulations and the exercise of discretion. As background, the Naturalization Application (N-400) of Ranjodh Singh received provisional approval from CIS on March 7, 2008. In April 2008, the Agency discovered that Sukjhit Singh had engaged in fraud and illegally procured relief for he and his family. After acquiring this derogatory information, CIS sent Ranjodh

---

2 Crimes of Moral Turpitude Render an Alien Inadmissible Under INA 212(a)(2)(A).

3 See: U.S. v. Freidrich, 402 F.3d 842 (8th Cir. 2005) where working as a guard in a Nazi concentration camp sufficiently established that the petitioner persecuted others within the meaning of Refugee Relief Act (the predecessor statute to the DPA) and concealment of such conduct amounted to illegal procurement of citizenship; See also: U.S. v. Dailide, 316 F.3d 611, 618 (6th Cir. 2003) where a former member of the Lithuanian special unit who persecuted Jewish civilians in that capacity illegally procured his citizenship. See also: Polities v. United States, 364 U.S. 426, 81 S.Ct. 202, 5 L.Ed.2d 173 (1960), the petitioner was a member of the Communist Party of the United States and membership in such a party is a statutory bar to citizenship pursuant to INA §313., membership in a communist party is deemed *prima facia* evidence that the applicant is not attached to the principals of the U.S. Constitution and not well-disposed to the good order and happiness of the United States at the time of naturalization. INA §340(c).

> Singh a Motion to Reopen the District Director's decision approving his application for naturalization. Mr. Singh's attorney responded to the Motion to Reopen on November 10, 2008 and on April 8, 2009. On September 3, 2009, upon further review, CIS dismissed its motion to reopen Mr. Singh's naturalization approval as a matter of discretion. *See* 8 C.F.R. §335.5 (stating " . . .[W]hen the Service is in receipt of any information that would indicate than an application for naturalization should not have been granted on the merits, the Service *may* institute proceedings to reopen the application before admission to citizenship, or to revoke the naturalization of a person who has been admitted to citizenship . . . . (*emphasis added*)); *Baidas v. INS*, 123 Fed.Appx. 663, 670 (C.A. 6 (Mich.)). Mr. Singh subsequently took the oath of allegiance and was issued a certificate of naturalization on September 25, 2009."

*See Exhibit 5, Government Discovery Response Re: Legality of R. Singh Naturalization.*

The Government misconstrued its own regulations and the case of *Baidas v. INS,* to argue that Ranjodh's naturalization was legally obtained, and is therefore distinguishable from his mother's. First, the Government cites to 8 C.F.R. 335.5, but the quoted text comes from 8 C.F.R. 334.5. Importantly, Section 335.5 compels the Government to issue a motion to reopen naturalization when it obtains derogatory information concerning the applicant; it states:

> "In the event that the Service receives derogatory information concerning an applicant whose application has already been granted… but who has not yet taken the oath of allegiance…the Service **shall** remove the applicant's name from any list of granted applications… until such time as the matter can be resolved. The Service **shall** notify the applicant in writing of the receipt of the specific derogatory information, with a motion to reopen the previously adjudicated application, giving the applicant 15 days to respond. **If the applicant overcomes the derogatory information**, the application will be granted and the applicant will be scheduled for administration of the oath of allegiance. **Otherwise** the motion to reopen will be granted and **the application will be denied…**" (emphasis added).

Procedurally, this is what happened in Ranjodh's case. He was approved for naturalization, then prior to his oath ceremony the Government issued a Motion to Reopen. Ranjodh, through the undersigned attorney, responded to the Motion to Reopen and the Government agreed to proceed

7

with the oath ceremony. In accordance with the regulations, Ranjodh "overcame" the alleged derogatory information, otherwise, the Government would have been required to deny his application for naturalization under 8 C.F.R. 335.5. Therefore, Ranjodh was eligible for citizenship. If the Government "closely adhered" to its regulations as it claimed, when it granted Ranjodh's naturalization, it would not have been authorized to exercise "discretion" once the Motion to Reopen was served.

8 C.F.R. 334.5, which the Government quotes in discussing Ranjodh's application (though it incorrectly cited to 8 C.F.R. 335.5) applies to clerical errors on the application for naturalization. It states that only clerical errors are permitted amendments to an application for naturalization. In discussing these regulatory provisions, the Sixth Circuit pointed out that: "Substantive amendments… will not be authorized." Baidas v. INS, 123 Fed.Appx. 663 (6th Cir. 2005) *citing*: 8 C.F.R. 334.5(b). This means that the Government cannot unilaterally amend an application and disqualify an applicant for citizenship without notice to the applicant which provides him an opportunity to contest the new information either through a motion to reopen or denaturalization proceedings. 8 C.F.R. 335.4(b) goes on to explain this:

> "…When the Service is in receipt of any information that would indicate that an application for naturalization should not have been granted on the merits, the Service may institute proceedings to reopen the application before admission to citizenship or to revoke the naturalization of a person who has been admitted to citizenship…"

The Regulations, when read together provide due process for an approved applicant who has not yet taken the oath to contest information later learned by the Government. In its statement regarding the legality of Ranjodh's citizenship the Government misquotes the regulations and the case of Baidas v. INS, *supra.*, as authorizing discretion on its part to drop a motion to reopen, once

pursued. This is incorrect. Close adherence to the regulations, as the Government claims it exercised, requires that once a motion to reopen is initiated, the burden shifts to the applicant to overcome the derogatory information otherwise "the application will be denied." 8 C.F.R. 335.5. If Ranjodh Singh's naturalization was illegally procured, it should have been denied in accordance with the regulations. By extension, his mother's application was not illegally procured. Furthermore, if her naturalization was illegally procured, close adherence to the regulations required the Government to revoke it within two (2) years (See Section C, Below). With full knowledge of the use of Mr. Singh's two identifies, the Government did not initiate revocation proceedings within two (2) years, as required, therefore, it is clear that Ms. Kaur's citizenship was not illegally procured.

### C. THE GOVERNMENT FAILED TO REVOKE MS. KAUR'S CITIZENSHIP WITHIN TWO YEARS OF GRANTING IT, THEREFORE, THIS ACTION IS TIME BARRED

If Ms. Kaur's citizenship was illegally procured, under the applicable regulation, the Government was required to revoke it within two (2) years, which it did not. The Government has admitted that they were first aware of the alleged fraud on April 16, 2008 (though the FBI Rap Sheet for Mr. Singh indicates that the Government had knowledge of his use of two identities in September of 2005). *See Exhibit 4.*

Even assuming that their position is correct, they did not comply with the two (2) year statute of limitations to revoke naturalization under INA Section 340(h) and 8 C.F.R. Section 340.1(b). 8 C.F.R. Section 340.1(b) states: "The District Director under whose jurisdiction over the applicant currently **must file** a Notice of Revocation, except that the Notice of Intent to Revoke Naturalization Proceedings in the above naturalization **must** be served no later than two (2) years after the effective date of the Order admitting the person to citizenship..." (emphasis added). This section applies to

9

any Order admitting a person to citizenship. The Government did not comply with the statute of limitations under 8 C.F.R. 340.1(b). They were aware of the alleged irregularity of the husband's asylum but did nothing to revoke naturalization for two (2) years as required under the law. *See Exhibit 5, Discovery Response of Government.*

8 C.F.R. is quite clear that the District Director must file the Notice of Intent to Revoke within the two (2) year period. Ms. Kaur was naturalized on March 20, 2008. Therefore, the two (2) year period expired on March 19, 2010. No Notice of Intent to Revoke was filed. Therefore, the Government did not comply with their own law and regulation, and they are barred at this time under the statute of limitations contained in their regulations. This regulation has now been repealed. However, the repeal of the regulation occurred in 2011, long after the two (2) year period expired. Though there is no legal authority on retroactivity of 8 C.F.R. 340.1(b), however when statutes and regulations are silent on retroactivity the law then in effect applies. *See*: INS v. St. Cyr, 533 U.S. 289 (2001) for application of retroactivity in INA 212(c) context; the Court would not read the statute to violate "reasonable reliance and settled expectations." Id., at 321.

### D. MS. KAUR IS A LAWFUL PERMANENT RESIDENT BECAUSE HER HUSBAND IS A REFUGEE WITHIN THE MEANING OF THE ACT

Under INA Section 209 the Secretary of Homeland Security... may adjust the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who:

(1) applies for adjustment

(2) has been physically present in the United States for at least one (1) year after having been granted asylum,

(3) continues to be a refugee within the meaning of Section 101(a)(42)(A) or a spouse or child of such a refugee..."

Upon approval of an application under this subsection, the Secretary of Homeland Security shall establish a record of the alien's admission for lawful permanent residence as of the date one (1) year before the date of the approval of the application. At the time of Ms. Kaur's adjustment to permanent resident she was physically present in the United States as an asylee for one (1) year. At that time her husband was a refugee within the meaning of Section 101(a)(42)(A) of the Act. At the time of Mr. Singh's application for asylum (1990s), there was a well-documented pattern and practice of persecution by Indian Government against Sikhs. *See: Exhibit 2, documentation regarding persecution and torture of Sikhs in India at that time.* This constitutes religious persecution under INA Section 101(a)(42(A). Sukwanputra v. Gonzales, 434 F.3d 627, 637 (3d. Cir. 2006). Therefore, Ms. Kaur was eligible for adjustment of status as a matter of law.

The Government cannot meet their burden of proof to establish that the Defendant's husband was not a refugee at the time that the Defendant adjusted to permanent resident. The Government in their Complaint in Item 21 indicates that on July 2, 2008, the U.S. CIS office in San Francisco issued a Recision Notice to Singh, Kaur, and their four (4) children rescinding their granted asylum as of July 2, 2008. (Singh and Kaur do not have four (4) children). However, the rescission is not valid under INA Section 208(c)(2).[4] There is no basis under the INA to revoke asylum for an alleged fraud of a principal asylee. There is no basis in the law to revoke a derivative asylum status. Further the asylum status had already ceased since Ms. Kaur had already acquired U.S. citizenship. Therefore, her asylum could not be terminated in accordance with the law.

Ms. Kaur's naturalization occurred on March 20, 2008. The action to revoke her naturalization was filed on June 14, 2011. The Government was aware of the alleged fraud of Mr.

---

4 See 8 C.F.R. 208.24(c) requiring notice, an interview and an opportunity to be heard.

11

Singh well in advance of Ms. Kaur even being granted adjustment of status to permanent resident on May 27, 2003. Documentation is attached showing that biometric reports for Mr. Singh were obtained and in possession of U.S. CIS well in advance of the grant of permanent residence to Ms. Kaur, his wife. *See Exhibit 4.* The biometric rap sheets from the FBI clearly show that Mr. Singh had two (2) separate names in the FBI database. *Id.* Some of these biometric reports (Rap Sheets) are dated years before Kaur was a permanent resident.

Furthermore, Ms. Kaur and her children were all granted lawful permanent resident status based on their request under Section 209 of the Act. Mr. Singh, who filed his application at the same time or before his family members, was never granted permanent resident status. To this day he has not been granted permanent resident status under Section 209 as the basis of his asylum. The Affidavit of Good Cause, attached to Plaintiff's Complaint (Allegation VIII) states that the adverse facts were discovered when Singh applied for permanent resident. *See Exhibit 3, Mr. Singh's Application for Permanent Residence.* Therefore, the documentation clearly shows that the Defendant's permanent residence was granted by U.S. CIS after they knew of the alleged fraud. The citizenship of Ms. Kaur was granted many years after her permanent residence was granted. Therefore, her permanent residence and citizenship were granted by U.S. CIS with full knowledge of the alleged fraud of Mr. Singh.

Even assuming that Mr. Singh used different identities, it is not disputed that he and his family are Sikhs from India. During the time that he and his wife applied for permanent residence based upon asylum they all met the definition of a refugee under the Immigration & Nationality Act. Under INA 101(a)(42) they were refugees based on religious persecution. Therefore, the decision of U.S. CIS to grant the permanent residence of Ms. Kaur and the children was lawful and in

accordance with the law under INA Section 209 and 8 C.F.R. 209. They did so with full knowledge of the alleged wrongdoing of Mr. Singh. Therefore, this Court as a matter of law should grant the Defendant's Motion for Summary Judgment and dismiss the Complaint.

Therefore, it is respectfully requested that the Court enter an Order dismissing this action against the Plaintiff for failure to comply with the statute of limitations contained under INA 340(h) and 8 C.F.R. 340.1(b).

### E. UNDER INA 237(a)(1)(H) THIS COURT HAS AUTHORITY TO WAIVE LAWFUL ADMISSION FOR PERMANENT RESIDENCE, THEREFORE, THE COURT SHOULD ENTER JUDGMENT FOR THE DEFENDANT

This Honorable Court has de novo jurisdiction to naturalize an individual. INA Section 310(c). Therefore, this Court stands in the "same shoes" as the U.S. CIS in making a determination to naturalize an individual. The U.S. CIS has discretionary authority to waive lawful admission for permanent residence. According to U.S. CIS, it exercised discretion when naturalizing Mr. Ranjodh Singh. *See Exhibit 5, Discovery Response Re: legality of Ranjodh Singh's naturalization.* Further there is an operating instruction of the U.S. CIS authorizing U.S. CIS to proceed with naturalization even if they make a determination that the lawful admission for permanent residence is defective. Under INS interpretation 318.5 if an individual is *prima facia* eligible for a waiver under 241(f) (now codified under Section 237(a)(1)(H) of the Immigration & Nationality Act) they may proceed with naturalization as a matter of discretion. The requirements under 237(a)(1)(H) are that the individual must be the parent, spouse or child of a U.S. citizen or an alien lawfully admitted for permanent residence. Ms. Kaur does bear such a relationship (two U.S. citizen children). The 237 (a)(1)(H) waiver can be used to waive fraud and an invalid visa. Matter of Fe, 23 I&N Dec. 985 (BIA 2006).

Therefore, this Court has jurisdiction to grant the waiver "nunc pro tunc." It would be a miscarriage of justice and a tremendous waste of time for this Court to denaturalize Ms. Kaur. Ms. Kaur would then proceed to re-file for naturalization, ask this Court to apply the waiver and the Court would then again grant her naturalization. It has already been established in this memorandum of law that the Government was aware based on the biometric reports of the FBI of the alleged wrongdoing of Mr. Singh long before Ms. Kaur was granted her permanent residence and long before she was granted naturalization. To reiterate U.S. CIS had in their possession biometric documentation regarding her husband, Mr. Singh, that he may have used two (2) identities. They also proceeded with the granting of permanent residence to Ms. Kaur and the children but did not grant the permanent residence of the father/husband, Mr. Singh. The permanent residence was granted back in 2003. Therefore, Mr. Singh's Application for Permanent Residence is pending for more than 10 years without being approved. The U.S. CIS did not approve his permanent residence because of course they were aware of the alleged wrongdoing by Mr. Singh. As was pointed out previously, if he was a refugee within the meaning of INA Section 101(a)(42) he was entitled to have his permanent residence granted notwithstanding any irregularities in his prior applications. This determination can be made by the Immigration Judge at the time of his Removal Hearing.

At the time of Ms. Kaur's naturalization her two (2) children were lawful permanent residents of the United States. They subsequently obtained citizenship. However, the 237(a)(1)(H) waiver applies to the mother of a permanent resident or the mother of a U.S. citizen.

If, U.S. CIS as a matter of discretion granted the Application for Naturalization of the son, Ranjodh Singh, this Court has the same discretionary jurisdiction (de novo jurisdiction) under INA Section 310(c) to waive any requirement of lawful admission for permanent residence of Ms. Kaur

14

and to grant her naturalization. It is clear from the record that Ms. Kaur's lawful admission for permanent residence was valid as a matter of law. Therefore, her grant of citizenship was also valid. However, even if the Court finds that her lawful admission for permanent residence was not valid for some reason the Court is still authorized to waive this requirement and allow Ms. Kaur to be a naturalized U.S. citizen. In this case I again remind the Court that Ms. Kaur has been guilty of no wrongdoing. She is free of any crimes. She has never been arrested in any country. She has lived in this country for many years. She is deserving of a favorable decision as a matter of discretion.

I urge that this Court should apply the INS interpretation at this time nunc pro tunc and find that as a matter of law Ms. Kaur has been lawfully admitted for permanent residence or that any defect in her lawful admission for permanent residence is hereby waived.

This action to denaturalize her is a clear retaliation on the part of the U.S. Government because they claim she has petitioned her husband under Section 201(b) and 204 of the Immigration & Nationality Act. They state that revoking her naturalization is fair and just since her husband is in Removal Proceedings, and he should not be allowed to benefit from her citizenship and obtain permanent residence. However, it is not disputed that even if Ms. Kaur's citizenship is revoked that she still retains her legal permanent resident status. Since she would be a legal permanent resident of the United States she would still be eligible to petition her husband under INA Section 203(a)(2)(A)(2). So then why denaturalize her? This Court should not allow this travesty of justice. I urge that this Court find as a matter of law that Ms. Kaur's naturalization is not subject to revocation and dismiss this action.

This action to denaturalize her is a clear retaliation on the part of the U.S. Government because they claim she has petitioned her husband under Section 201(b) and 204 of the Immigration & Nationality Act. They state that revoking her naturalization is fair and just since her husband is in Removal Proceedings, and he should not be allowed to benefit from her citizenship and obtain permanent residence. However, it is not disputed that even if Ms. Kaur's citizenship is revoked that she still retains her legal permanent resident status. Since she would be a legal permanent resident of the United States she would still be eligible to petition her husband under INA Section 203(a)(2)(A)(2). So then why denaturalize her? This Court should not allow this travesty of justice. I urge that this Court find as a matter of law that Ms. Kaur's naturalization is not subject to revocation and dismiss this action.

## CONCLUSION

The Court as a matter of law should find that the Government has failed to demonstrate facts to establish an element essential to their case. The lawful admission to permanent residence of Ms. Kaur is valid and was not obtained illegally. The rescission of her asylum status after she was naturalized was unlawful. Her asylum status was not revocable at any time, most certainly not revocable after she naturalized. The U.S. CIS knew prior to her grant of permanent residence and naturalization that there were some irregularities with her husband's asylum application but granted her Applications for Permanent Residence and Naturalization. They granted the naturalization of her daughter and son. Her grant of lawful residence is, therefore, lawful. Even if her grant of permanent residence is unlawful, she is eligible for a nunc pro tunc waiver under Section 237(a)(1)(H) and, therefore, this Court as a matter of discretion can waive any irregularities in her lawful admission for permanent residence. If her son Randjodh's, naturalization is lawful, then Ms. Kaur's is lawful as well.

The Government has been aware of the issues in this case for many years. They have not complied with the statute of limitation to revoke naturalization of Ms. Kaur within the two (2) year period required under the statute of limitations and, therefore, their action must fail.

The Government granted Ms. Kaur's citizenship and Ranjodh's citizenship because no illegality occurred in their procurement. Now that Ms. Kaur has filed an immigrant visa petition on behalf of her husband, the Government has initiated this action. To allow the Government to revoke Ms. Kaur's citizenship would grossly pervert the law on naturalization and would sanction a U.S. Government that could revoke the citizenship of any naturalized citizen if it did not approve of her choice(s) in exercising her legal rights. There is nothing illegal about Ms. Kaur's citizenship; the Government simply does not approve of her exercising her right, as a citizen, to petition her husband. The denaturalization statute was not intended for this purpose; it was intended to protect the United States from those who commit illegal acts or fraud to procure their U.S. citizenship, and such acts are not known to the Government at the time of granting citizenship. There is no legal authority for the Government's case in this action. As a matter of law, the Government's case fails. It is respectfully requested that this Court grant the Defendant's Motion for Summary Judgment and enter the proposed order that judgment be entered in favor of the Defendant and against the Plaintiff.

                                          Respectfully submitted,

_____  
**Date**

                                          /s/John J. Hykel_____  
**John J. Hykel**  
**PA Attorney ID 22884**  
**Suite 1300**  
**2 Penn Center Plaza**  
**1500 JFK Boulevard**  
**Philadelphia, PA 19102**  
**215-405-0555**  
**215-405-0449 (fax)**  
**jhykel@aol.com**  
*Counsel for Defendant*