**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **CIVIL ACTION** |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **2-11-cv-03868-LS** |
| | ) | |
| AMANJEET KAUR, | ) | |
| | ) | |
| **Defendant,** | ) | |

AND NOW, comes Defendant, Amanjeet Kaur, through the undersigned counsel and respectfully requests that the Plaintiff's Motion for Summary Judgement be dismissed. The Plaintiff, U.S. Government, has requested the Court to revoke the naturalization of Mrs. Kaur based upon an alleged asylum fraud by her husband. The Defendant has not been guilty of any wrongdoing in this country. She is a law abiding loyal U.S. citizen and is entitled to have Plaintiff's Motion for Summary Judgement dismissed.

It is disputed that she was never lawfully admitted for permanent residence. To the contrary Ms. Kaur was lawfully admitted for permanent residence in accordance with Section 209 of the Immigration & Nationality Act.

The Government has argued that Ms. Kaur's lawful admission for permanent residence is not valid. Their analysis is incorrect. Under INA Section 209(b) the U.S. CIS is authorized to adjust status of any person who has been granted refugee status. 8 U.S.C. 1159(b). The requirements are as follows... "the Attorney General...may adjust the status of an alien lawfully admitted for permanent residence. The status of any alien granted asylum who

1) applies for adjustment,

1

2)      has been physically present in the United States for at least one year after having been granted asylum,

3)      continues to be a refugee within the meaning of 101(a)(42)(A) or a spouse or child of such a refugee...

In this case Ms. Kaur was a refugee at the time of her adjustment. She was granted asylum and entered in asylum status on July 23, 998. See Exhibit 1. Furthermore, her spouse, Sukhjit Singh, was a refugee. They were both refugees. They were Sikhs from the province of Punjab in India. At the time that Mr. Singh applied for asylum and permanent residence, there was great persecution of members of the Sikh religion in Punjab, India. Therefore, not only was Mr. Singh a refugee within the meaning of Section 101(a)(42)(A) but Ms. Kaur was also a refugee within the meaning of the same statute. With Defendant's Motion for Summary Judgement filed on August 16, 2013 voluminous documentation was given regarding the persecution of Sikhs in Punjab, India. The Defendant respectfully requests through undersigned counsel that she be given an opportunity to prove her case at trial, that she and her husband were refugees within the meaning of Section 101(a)(42) and, therefore, they were fully eligible to adjust status to permanent resident. The fact that Mr. Singh may have embellished his application for asylum and even misstated his identity is not dispositive of the issue of whether or not he was a legitimate refugee from India. Where there is a well documented pattern and practice of persecution by the Government of the applicant's home country, the applicants qualify for asylum.[1] Sukwantutura v. Gonzales, 434 F.3d 672 (3rd Cir. 2006). The applicant is entitled to present her case to the Court and it is the Court's decision to decide

---

[1]See Exhibit 5 of Defendant's Motion for Summary Judgement regarding persecution of Sikhs in Punjab, India.

whether or not Mr. Singh or Ms. Kaur were refugees within the meaning of Section 101(a)(42). The Government has not met its burden of proof regarding its allegation that Ms. Kaur illegally procured her naturalization. The Government has not offered any evidence whatsoever except that Mr. Singh used two (2) identities and embellished his claim. The undersigned respectfully submits that the Court may discount some parts of the claim but find that other parts of the claim are legitimate and that a Defendant and her husband both did meet the definition of a refugee.

The Plaintiff, U.S. Government, in their Motion for Summary Judgement are asking this Honorable Court to set aside the naturalization of Ms. Kaur and effectively strip her of her citizenship. They ask the Court to do this based upon a technical analysis of the term "lawfully admitted for permanent residence." There is absolutely no precedent for the Government's case. Only in cases where the *conduct of the person* was contrary to the statutorily proscribed behavioral requirements for citizenship and such behavior was intentionally concealed by the applicant at the time of naturalization has it been held that citizenship was "illegally procured" under INA §340. These cases include Nazi war criminals, communist party members, felony offenders, commission of crimes of moral turpitude[2], and failure to reside in the United States for the statutorily proscribed period of 5 years prior to citizenship.[3]  Ms. Kaur has engaged in no conduct which is offensive to the

_____

[2]Crimes of Moral Turpitude Render an Alien Inadmissible Under INA 212(a)(2)(A).

[3]See U.S. v. Freidrich, 402 F.3d 842 (8th Cir. 2005) where working as a guard in a Nazi concentration camp sufficiently established that the petitioner persecuted others within the meaning of Refugee Relief Act (the predecessor statute to the DPA) and concealment of such conduct amounted to illegal procurement of citizenship; See also: U.S. v. Dailide, 316 F.3d 611, 618 (6th Cir. 2003) where a former member of the Lithuanian special unit who persecuted Jewish civilians in that capacity illegally procured his citizenship.  See also: Polities v. United States, 364 U.S. 426, 81 S.Ct. 202, 5 L.Ed.2d 173 (1960), the petitioner was a member of the Communist Party of the United States and membership in such a party is a statutory bar to citizenship pursuant to INA §313., membership in a communist party is deemed *prima facia*

3

statutory requirements for citizenship. The Government, I am sure, would concede that the Defendant is a legal permanent resident of the United States which is also a requirement for naturalization. However, they seek to set her citizenship aside on the technical premise that she was not lawfully admitted for permanent residence. This request is being made by the Plaintiff even though the Defendant has not done anything wrong or unlawful. She did not do anything illegal which would cause her to be de-naturalized. The basis of the Government's request is an alleged wrongdoing by her husband 20 years ago. They will not concede the fact that U.S. CIS had authority to grant a waiver under INA Section 237(a)(1)(H). See also Matter of Fu, 23 I&N Dec. 985 (BIA 2006) where it was held that the above mentioned waiver authorizes a waiver of removability based on visa fraud or willful misrepresentation of a material fact or the lack of a valid immigrant visa or entry document. Therefore, since U.S. CIS granted the permanent residence and naturalization of Ms. Kaur and her family members it is only logical that they applied this waiver especially in light of the fact that they knew about Singh's use of two (2) identities prior to her naturalization. See Exhibit 2 of Mr. Singh Biometrics. However, the Government has not conceded this. They adhere to their technical argument that Ms. Kaur should be stripped of her naturalization because she was not lawfully admitted for permanent residence. The motive for this is sheer retaliation by the U.S. Government. Ms. Kaur, whether a legal permanent resident or naturalized citizen, is eligible to petition her husband under INA Section 204. The Court should not accept this technical argument by the Plaintiff, U.S. Government. The Court should please accept the contentions of the Defendant regarding her lawful admission for permanent residence or at the very least order a trial in this matter

---

evidence that the applicant is not attached to the principals of the U.S. Constitution and not well-disposed to the good order and happiness of the United States at the time of naturalization. INA §340(c).

4

so that the Defendant may plead her case that she was lawfully admitted for permanent residence.

It is the Defendant's contention that she was lawfully admitted for permanent residence and that both she and Mr. Singh were refugees within the meaning of INA 101(a)(42)(A). Section 209 does not state that a person must have been legally granted asylum or refugee status. INA Section 209 and implementing regulations cited by the Government in their Brief clearly state that a person must meet the definition of a refugee. A refugee is a person "who is outside any country of such person's nationality... and who is unable or unwilling to return to, and is unwilling or unable to avail himself or herself of the protection, that country because of persecution or well founded fear of persecution on account of..religion." INA 101(a)(42). Under 8 C.F.R. 208.13(b)(2)(C)(iii)(A) the applicant is eligible for asylum and is classifiable as a refugee if he can establish that there is a pattern of practice in his or her country of nationality of..."persecution of a group of persons similarly situated to the applicant on account of...religion..." It is uncontested that Mr. Singh is a Sikh and at the time that he applied for asylum there was a pattern and practice of persecution in India. Ms. Kaur testified that not only was there a pattern and practice existing in the country but that her husband was singled out for persecution when, on two occasions, police came to the family's home looking for her husband. Exhibit 3 - (Kaur Deposition, Page 10, 20-25). Her testimony is uncontroverted and she is worthy of belief.

It is true that Mr. Singh misrepresented his name. Please consider his plight. He was a legitimate refugee from India. What he did was not justifiable. He should not have attempted to short circuit the process through the Immigration Court. He could have appealed to a higher authority and based on the pattern and practice doctrine as well as him being singled out, his application for asylum likely would have been granted. However, taking into consideration the kind of pressure he

5

was under, it is understandable that he may have acted rashly.  He had come from a country where he was being persecuted.  His family was left behind including his children.  There was mass executions of Sikhs in India at that time.  Please consider the plight of Sikhs in India at that time. His family may consider his actions to be self sacrificing and even heroic.

The Government in their Brief has misstated several facts. In their Memorandum of Law background on Page 2 it is stated "Singh alleged to have been persecuted in India even though he was living in the United States during the alleged persecution. "They reference Exhibit 4.  There is nothing in Exhibit 4 or anywhere else in the record to corroborate this fact.  In the next paragraph on Page 2 of their Memorandum they indicate that "the Government officer who approved the application was not aware that Singh had already sought asylum unsuccessfully in another jurisdiction, or that he had been placed in Deportation Proceedings in 1993. Id. Singh failed to provide this information on his second asylum application, as he was required to do.  The reference to Exhibit 4 does not contain this information. It is not in the record. Therefore, the Government is basing its case on information that is not in the record and has not been proven.  The Motion for Summary Judgement should not be granted based on facts that are not in the record. On Page 2 of the Memorandum it is stated "after filing a form I-485, Application for Adjustment of Status, Kaur was granted legal permanent residence ("LPR") status on May 27, 2003...." It is agreed that Ms. Kaur was granted legal permanent resident status on May 27, 2003.  The admission by the Government on Page 2 is correct and their Motion for Summary Judgement should be dismissed because the applicant was granted legal permanent resident status based on the Government's own admission.  On Page 3 of the Memorandum it is stated "when Singh applied for lawful permanent resident status after Kaur naturalized... This is another misstatement of the facts. Mr. Singh applied

6

for lawful permanent resident status long before Ms. Kaur naturalize. Mr. Singh applied in 1998 and he was not interviewed until 2006. See Exhibit 4, Application to Adjust Status. His application sat at INS/U.S. CIS for eight (8) years while the applications of his family members were all approved. The Government was aware of the true identity of Singh prior of the grant of Ms. Kaur's legal permanent resident status and Ms. Kaur's naturalization. Notwithstanding the fact that they were aware of this double identity issue, the U.S. CIS still granted the legal permanent resident status of Ms. Kaur and her subsequent naturalization. If the Government believed there was a fraud, it executed a waiver, as permitted. On Page 3 it is stated "the next day, on July 3, 2008, U.S. CIS denied Singh's Application for Adjustment of Status. (Exhibit 4). Exhibit 4 is not a denial of the Application for Permanent Residence. There is no indication of any denial of Singh's Application for Adjustment of Status in the Government's moving papers. They have not met their burden.

The Government on Page 3 of their Memorandum then states that since Singh on June 26, 2008 filed an Application for Waiver of Grounds of Inadmissibility and admitted in his affidavit that he used a double identity, that he was automatically not a refugee within the meaning of Section 101(a)(42) and, further, that Ms. Kaur, his wife, was not lawfully admitted for permanent residence. The statements do not support the Government's contention that Ms. Kaur was not lawfully admitted for permanent residence. Mr. Singh, as previously stated, was a refugee and Ms. Kaur was granted asylum for one (1) year prior to her Application for Permanent Residence and was the spouse of someone who was a refugee within the meaning of 101(a)(42). This is all that is required for adjustment of status under INA 209. Therefore, Ms. Kaur was eligible for the lawful admission for permanent residence, and her lawful admission for permanent residence was properly granted.

The standard for de-naturalization is also misstated by the Government. The Government

7

must establish by "clear and convincing" evidence that the naturalization was fraudulently or unlawfully obtained. Fedorenko v. U.S., 449 U.S. 490, 505 (1985) quoting Costello v. U.S., 395 U.S. 265, 269 (1961). It is respectfully submitted that the de-naturalization standard as stated on Page 4 of the Government's Memorandum of Law is not accurate. The Government in their Motion for Summary Judgement has not established by clear and convincing evidence that the naturalization should be set aside. Further there are many material issues of facts remaining in this case. INA Section 209 doesn't say that a person must not have committed misrepresentation when they were granted asylum. Section 209 only requires that a person be a refugee within the meaning of 101(a)(42) in order to qualify for adjustment of status. Section 209 also includes the spouse of someone who meets the definition of a refugee. The fact that Mr. Singh may have misrepresented certain facts on his application for asylum status is not dispositive of whether or not he met the definition of refugee. Furthermore, it has no bearing on whether or not Ms. Kaur met the definition of refugee under the pattern and practice standard. These are material facts that need to be proven at trial and it is, therefore, requested that the Motion for Summary Judgement of the Plaintiff be dismissed.

## CONCLUSION

The Plaintiff in this case has requested summary judgement based upon the proposition that the Defendant, Ms. Kaur, obtained her naturalization illegally. There is not an indication in their Brief that she committed any fraud or misrepresentation. The proposition that she obtained her permanent residence illegally is that she was not lawfully admitted for permanent residence which is a requirement for naturalization under INA Section 316(a). The Government failed to meet its burden of "clear and convincing evidence" to prevail. Ms. Kaur was lawfully admitted for

8

permanent residence under INA Section 209 and implementing regulations. She herself was a refugee within the meaning of 101(a)(42) and, further, she was the spouse of a refugee under Section 101(a)(42). Additionally, the Government was aware of the alleged fraud committed by Mr. Singh several years prior to her naturalization. Therefore, any alleged fraud was waived.

The facts which formed the basis of the Plaintiff's request for summary judgement are not in the record and have, therefore, been misstated. There are material issues in the case that are disputed and, therefore, the Motion for Summary Judgement should be dismissed.

Respectfully submitted,

**08/30/2013**
**Date**

/s/John J. Hykel
**John J. Hykel**
**PA Attorney ID 22884**
**Suite 1300**
**2 Penn Center Plaza**
**1500 JFK Boulevard**
**Philadelphia, PA 19102**
**215-405-0555**
**215-405-0449 (fax)**
**jhykel@aol.com**

*Counsel for Defendant*

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 2-11-cv-03868-LS |
| | ) | |
| AMANJEET KAUR, | ) | |
| | ) | |
| Defendant, | ) | |

## ORDER

**AND NOW**, this _____ day of _____, 20____ upon consideration of Defendant's Motion for Summary Judgement and any responses thereto, it is ORDERED that the Defendant's Motion is granted and judgement is entered in favor of Defendant and against the Plaintiff.

BY THE COURT:


/s/ Lawrence F. Stengel_____
LAWRENCE F. STENGEL, J.