**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 11-3868 |
| AMANJEET KAUR, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

STENGEL, J                                                    **January 27, 2014**

      The United States instituted this action to denaturalize Amanjeet Kaur pursuant to 8 U.S.C. §1451 (a).  Currently pending are the parties' cross motions for summary judgment.  It is undisputed that Ms. Kaur's naturalization was predicated on her permanent resident status that was obtained through a grant of asylum to her husband, Surjit Singh.  Because Mr. Singh's asylum status is invalid and obtained by fraud, I must issue an order denaturalizing Ms. Kaur.  Therefore, I will grant the government's motion and deny Ms. Kaur's motion for summary judgment.

**I        Background**

      Ms. Kaur married Surjit Singh on December 14, 1978 in India.  P's statement of facts ¶ 1 (doc. no. 58-2).  On May 1, 1993, Mr. Singh entered the United States without inspection, and he was immediately placed in deportation proceedings.  Id. at ¶ 2.  He filed an asylum application in New York which an

immigration judge denied on May 9, 1996.[1]  Id. at ¶ 3.  Pending appeal, Mr. Singh filed a second asylum application in San Francisco using a different birthdate and the first name Sukhjit.[2]  Id. ¶ 4-5.  The former Immigration and Naturalization Service granted Mr. Singh's second asylum application on December 3, 1996.  Id. at ¶ 7.

On July 28, 1997, Mr. Singh petitioned the INS to grant Ms. Kaur derivative asylee status.  Id. at ¶8.  The INS approved Mr. Singh's petition, and Ms. Kaur was admitted to the United States on July 24, 1997.  Id. at ¶ 9.  The government granted Ms. Kaur legal permanent resident status on May 27, 2003. Id. at ¶ 10.  On March 7, 2008, Citizenship and Immigration Services approved Ms. Kaur's application for naturalization.  Id. at ¶ 12.  She was sworn in as a naturalized United States citizen on March 20, 2008.  Id. at ¶ 13.

Mr. Singh applied for legal permanent residence on December 15, 1998. Def. mot for summ. j. ex. 3 (doc. no. 57-6) at 2.  CIS denied his application on July 3, 2008.  P's reply br. ex. 1 (doc. no. 63-1).  On July 2, 2008, CIS rescinded Mr. Singh's grant of asylum "because USCIS did not have jurisdiction over [his] asylum application at the time asylum was granted."[3]  Id. at 2.  The derivative grants of asylum to Ms. Kaur and their children were rescinded as well.  Id.  On

---

[1] The Board of Immigration Appeals affirmed the denial of Mr. Singh's first asylum application on November 30, 2000.  P's reply br. ex. 1 (doc. no. 63-1).

[2] Defendant does not dispute that Mr. Singh used a different name on his second application.  Defendant does not address whether Mr. Singh used a different birth date on the second application; therefore, I will consider this fact undisputed for the purposes of the motion.  Fed. R. Civ. P. 56(e)(2).

[3] The parties dispute when the government learned about Mr. Singh's second application.  However, the timing of the government's discovery is not material to the resolution of this motion.

June 26, 2008, Mr. Singh filed an application for waiver of grounds of inadmissibility in which he stipulates, "While the appeal [of the first asylum application] was pending I moved to San Francisco and in 1996 I reapplied for asylum to the I.N.S. Asylum Bureau in San Francisco.  I spelled my name differently.  I knew I was wrong at that time."  P.'s mot. for sum. j. ex. 3 (doc. no. 58-6) at 4.

After rescinding Mr. Singh's asylum status, the United States placed Mr. Singh in removal proceedings.  Tr. of Oral Arg. at 29:16 (April 19, 2012) (doc. no. 18).  As his wife and naturalized citizen, Ms. Kaur petitioned for Mr. Singh to become a legal permanent resident to prevent his deportation.  Id. at 22:1-6.  The government instituted this proceeding to prevent Ms. Kaur from "using her status as a citizen … to confer legal status on her husband."  Id.

## II.    STANDARD OF REVIEW

A motion for summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Summary judgment is proper when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A party seeking summary judgment initially bears the burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument by pointing to evidence

that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "Evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Furthermore, the ordinary standard of review for a motion for summary judgment must be colored by the heightened evidentiary standard the government bears in an action to denaturalize a citizen.  See U.S. v. Koreh, 59 F.3d 431 (3d Cir. 1995) (noting that the government's heavy burden of proof has an "impact on our review").  "The evidence justifying revocation of citizenship must be clear, unequivocal, and convincing and not leave the issue in doubt."  Fedorenko v. United States, 449 U.S. 490, 505 (1981)(internal quotations marks omitted) (quoting Schneiderman v. United States, 320 U.S. 118, 125 (1943).  This heavy burden is consistent with the consequences which flow from the cancellation of an order of naturalization.

## III    DISCUSSION

The United States claims that Ms. Kaur illegally procured her citizenship and brings this action to denaturalize her pursuant to 8 U.S.C. § 1451(a).  The denaturalization statute provides for the revocation of naturalization that was "illegally procured or … procured by concealment of material fact or by willful misrepresentation."[4]  8 U.S.C. § 1451(a).  Naturalization is illegally procured

---

[4]  "It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and

when the individual fails to comply with any of the prerequisites to naturalization established by Congress.  Fedorenko, 449 U.S. at 506.  An applicant must strictly adhere to the statutory requirements, and her naturalization must be cancelled for even the slightest aberration from the congressionally mandated terms.  *See* Id. at 517 (citing United States v. Ness, 245 U.S. 319, 321(1917) ("[W]e ordered the denaturalization of an individual who 'possessed the personal qualifications which entitled aliens to admission and to citizenship,' but who failed to file a certificate of arrival as required by statute.")  My role is to "rigidly enforce" compliance with the terms and conditions set by Congress.  Id. at 518 (quoting United States v. Ginsberg, 243 U.S. 472, 474–475 (1917).  Once the government proves illegality with clear and convincing evidence, I have no discretion "to refrain from entering a judgment of denaturalization against a naturalized citizen."  Id. at 517.

I must denaturalize Ms. Kaur because her naturalization was predicated on her permanent resident status that was obtained through an invalid grant of asylum to Mr. Singh.  Mr. Singh's grant of asylum is invalid because the former INS lacked jurisdiction to grant Mr. Singh's second asylum application.  Immigration judges "have **exclusive** jurisdiction over asylum applications filed by an alien who has been served a Form I–221, Order to Show Cause…."  8 C.F.R. § 208.2(b) (emphasis added) (amended 2009 and 2011).  Mr. Singh was placed in deportation proceedings pursuant to a Form I-221 Order to Show Cause.  P.'s mot. for summ.

---

setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation"  8 U.S.C.A. § 1451.

j. ex. 2 (doc. no. 58-5).  Mr. Singh admits he made his first application for asylum

to the immigration judge during the deportation proceedings.  P.'s mot. for summ.

j. ex. 3 at 4.  He further states that he made a second request for asylum to the INS

in San Francisco while he appealed the denial of his first application.  Id.  Mr.

Singh's admissions and the order to show cause are clear and convincing evidence

that the immigration judge retained exclusive jurisdiction over Mr. Singh's asylum

application which deprived the INS authority to grant Mr. Singh asylum.  Thus,

Mr. Singh's grant of asylum was invalid *ab initio*.

Alternatively, Mr. Singh's asylum status was fraudulently obtained because

he misrepresented material facts on his second application.  "[A]ny alien who, by

fraud or willfully misrepresenting a material fact, seeks to procure … admission

into the United States … is inadmissible."  8 U.S.C. § 1182(a)(6)(C)(i).  It is

undisputed that Mr. Singh lied on his second application by using a different first

name and birth date.  P.'s mot. for summ. j. ex. 3 at 4; *See supra* note 2.  These

facts are material as they would have disclosed Mr. Singh's true identity and

standing deportation order.  Mr. Singh's material misrepresentations precluded his

admission into the United States as an asylee.

Ms. Kaur's naturalization required a valid grant of asylum to Mr. Singh.

*See* United States v. Szehinskyj, 277 F.3d 331, 334 (3d Cir. 2002) ("Because

Szehinskyj entered this country under a visa issued to him pursuant to the DPA,

the legality of his naturalization ultimately turns on his eligibility under that

Act.").  Ms. Kaur was first admitted to the United States as a derivative asylee in

1997.  P.'s mot. for sum. j. ex. 5 (doc. no. 58-8).  Derivative asylee status is only available to spouses of aliens granted asylum.[5]  8 U.S.C.A. § 1158 (b)(3)(A). Thus, Ms. Kaur's derivative asylee status was unlawful because it depended on Mr. Singh's grant of asylum which was invalid.

In 2003, Ms. Kaur applied to adjust her status to legal permanent resident based on her grant of derivative asylum.  P.'s mot. for sum. j. ex. 6 (doc. no. 58-9). A refugee who seeks to adjust her status to legal permanent resident must establish, *inter alia*, that she was granted asylum, that she had been physically present in the country for at least one year and that she or her spouse continue to be a refugee as defined by the statute.[6]  8 U.S.C. § 1159(b).  Because Ms. Kaur's derivative asylum was defective and she never applied for asylum in her own right, she was not qualified to adjust her status.  P.'s mot. for sum. j. ex. 6 at 2 ¶ d (underlining derivative asylum as the status eligible for adjustment).  Claiming to be unaware of Mr. Singh's asylum fraud in 2003, the government erroneously granted Ms. Kaur application.  Nonetheless, Ms. Kaur was not lawfully admitted

---

[5]  "A spouse or child (as defined in section 1101(b)(1) (A), (B), (C), (D), or (E) of this title) of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien." 8 U.S.C.A. § 1158 (b)(3)(A).

[6]  "The Secretary of Homeland Security or the Attorney General … may adjust to the status of an alien lawfully admitted for permanent residence the status of **any alien granted asylum** who—

    (1)  applies for such adjustment,
    (2)  has been physically present in the United States for at least one year after being granted asylum,
    (3)  continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title or a spouse or child of such a refugee …."

8 U.S.C. § 1159(b) (emphasis added).

for permanent residence because she was never granted asylum in accordance with the immigration laws.[7]

Ms. Kaur applied for naturalization in 2007.  P.'s mot for sum. j. ex. 1 (doc. no. 58-4).  Congress mandates that only aliens "lawfully admitted to the United States for permanent residence" pursuant to the immigration laws may become naturalized citizens.  8 U.S.C. §1101(a)(20), §1429.  Since Mr. Singh's asylum was not valid, Ms. Kaur derivative asylum and adjustment to legal permanent resident status were not lawfully granted in accordance with the immigration laws.[8]  I must rigidly ensure that Ms. Kaur was lawfully admitted to the United States for permanent residence.[9]  Finding that she did not strictly comply with this prerequisite to naturalization, I must revoke her naturalization as illegally procured.

Ms. Kaur's motion attacks the government's case on several grounds, but as none of her arguments rebut the governments clear and convincing evidence of Mr. Singh's asylum fraud, I will deny her motion.

---

[7] Denaturalizing Ms. Kaur will have no effect on her legal permanent resident status.  There is a five year statute of limitation on rescinding an order adjusting an individual to legal permanent resident status.  8 U.S.C. §1256(a).  Ms. Kaur became a legal permanent resident on May 27, 2003; therefore, the government cannot revoke her legal permanent residence status.

[8] Contrary to Ms. Kaur's argument, I may find that legal permanent residence was unlawfully granted even though the government has not moved to rescind Ms. Kaur's adjustment to such status.

[9] Ms. Kaur is critical of this technical analysis of the statute. Def.s resp. Br. (doc. no. 62) at 3.  When considering a complaint for denaturalization, I must ensure that the naturalized citizen strictly adhered to all congressionally mandated prerequisites.  Fedorenko, 449 U.S. at 506.  In order to determine whether the defendant complied with the law, I must closely examine the statutory text and the defendant's actions.  This may be overly technical, but such analysis is required by law.

First, Ms. Kaur claims that her naturalization was not illegally procured because she committed no affirmative bad acts.  Neither the statute nor Fedorenko require a showing of the naturalized citizen's illegal conduct.  Rather, an individual can be denaturalized for the unwitting reliance of a third person's fraud when that reliance interrupts the individual's strict compliance with the immigration laws.  *See* Kyong Ho Shin v. Holder, 607 F.3d 1213, 1217 (9th Cir. 2010); Walker v. Holder, 589 F.3d 12, 21 (1st Cir. 2009).  This argument is irrelevant and does nothing to create a disputed issue of fact regarding Mr. Singh's asylum fraud.

Next, Ms. Kaur contends that since she was a refugee as defined by the statute that she was a lawful permanent resident.  She insists that qualifying as a refugee is all that is needed for lawful admission for permanent residence.  However, she ignores that the statute requires the applicant to have been granted asylum.  *See* note 8 and accompanying text.  Since Ms. Kaur never lawfully obtained derivative asylum, her assertion that she and her husband were refugees as defined by statute is immaterial.  *See* U.S. v. Szehinskyj, 277 F.3d at 335 (holding that once ineligibility is found as to an independent element of the statute, there is no need to find eligibility as to the other elements of the statute).

Third, Ms. Kaur requests that I waive the requirement of lawful admission for permanent residence pursuant to 8 U.S.C. § 1227(a)(1)(H).[10]  While the statute

---

[10] Ms. Kaur believes that a waiver is warranted because the United States knew of Mr. Singh's asylum fraud before the government granted Ms. Kaur legal permanent residence in 2003.  The United States disputes this fact arguing that the government did not learn of Mr. Singh's double identity until 2008.

vests the Attorney General with the sole discretion to grant a waiver, Ms. Kaur theorizes that I share the same discretion because a district court's review of the denial of a naturalization application is *de novo*. 8 U.S.C. § 1421(c). However, this is a denaturalization preceding not an appeal of an administrative decision. Thus, §1421(c) is inapplicable. I have no discretion to waive the requirement of lawful admission for permanent residence. Rather, I must grant the government's motion because they have produced clear and convincing evidence of illegality.

Ms. Kaur also re-argues two points from her motion for judgment on the pleadings which I denied with prejudice. First, Ms. Kaur directs my attention to the naturalization of her son Ranjodh Singh urging me to find that if Mr. Singh's asylum fraud was not a bar to Ranjodh's naturalization, the same fraud should not require her denaturalization.[11] In denying Ms. Kaur's motion for judgment on the pleadings, I concluded that CIS's determination that Ranjodh was qualified for naturalization is not entitled to preclusive effect in these proceedings. Second, she argues that there is a two year statute of limitations on reopening an application for

---

Since I find that I do not have the authority to grant a waiver, this disputed issue of fact is immaterial and does not warrant a trial.

In the alternative Ms. Kaur argues that the government must have granted her a waiver when adjusting her status to legal permanent residence. However, there is no evidence in the record that the government ever granted such a waiver. Indeed, this litigation is evidence that the government did not waive the defect in Ms. Kaur's naturalization

[11] The government mischaracterizes the argument stating, "Kaur alleges that because the government has not initiated denaturalization proceedings against her son …, Kaur's naturalization is somehow lawful." P.'s reply to br. (doc. no. 61) at 3. Kaur's argument is not that her son has not been denaturalized. Rather, her argument is that her son was naturalized after the government undoubtedly knew of Mr. Singh's asylum fraud. Nonetheless, the United States' is correct to assert that "it is fully within the government's discretion as to whether to pursue denaturalization." *Eg.* Clarke v. Holder, 767 F. Supp. 2d 106, 112-13 (D.D.C. 2011)

naturalization, but I have already found that there is no statute of limitations on the government initiating denaturalization proceedings. *See* <u>Schneiderman v. United States</u>, 320 U.S. 118, 174 (1943). I refer the parties to my order denying defendant's motion for judgment on the pleadings for further explanation.

Finally, I will deny Ms. Kaur's request for a trial so that she can plead her case that she was lawfully admitted for permanent residence. It appears from the briefs that there is no dispute as to any material fact; rather, there is a dispute as to what facts are material. As a matter of law, I find that the only material fact is whether or not Mr. Singh lawfully obtained his grant of asylum. Ms. Kaur fails to rebut the government's clear and convincing evidence of Mr. Singh's asylum fraud. Thus, Ms. Kaur's naturalization, which derives from Mr. Singh's fraud, is also illegally procured. I have no discretion to ignore Mr. Singh's defective asylum, and I must order Ms. Kaur's denaturalization.[12]

## IV    CONCLUSION

For the foregoing reasons, I will grant the government's motion for summary judgment. I will deny defendant's motion for summary judgment.

An appropriate order follows.

---

[12] Ms. Kaur's appeals to my equitable powers are unavailing. I understand that Mr. Singh may have been in a desperate situation when he fraudulently re-applied for asylum. I question the equity of denaturalizing Ms. Kaur while the government has naturalized her son with full knowledge of Mr. Singh's fraud. I recognize that Ms. Kaur has been a model citizen while living in this country the last seventeen years. Finally, I do not doubt that the government has taken this action to prevent Ms. Kaur from halting Mr. Singh's deportation. These are all very compelling reasons to dismiss the government's suit, but I am without discretion to take these factors into consideration. *See* <u>Fedorenko</u>, 449 U.S. at 518 (quoting <u>Ginsberg</u>, 243 U.S. at 474–475) ("An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon the terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare.")